IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID SHABOTINSKY, on behalf )
of himself and all other )
similarly situated members of )
both proposed classes of )
passengers, )
 )
       Plaintiffs, )
    v. )  Case No. 16 C 4865
 )
DEUTSCHE LUFTHANSA AG, a )
foreign corporation, )
 )
       Defendant. )
 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Shabotinsky ("Shabotinsky") brings this

putative class action against Deutsche Lufthansa AG

("Lufthansa") for violations of the Convention for the

Unification of Certain Rules for International Carriage by Air,

May 28, 1999, S. Treaty Doc. No. 106-45 (the "Montreal

Convention" or "the Convention"). Lufthansa has moved to dismiss

the complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal

Rules of Civil Procedure. In addition, Lufthansa has separately

moved to impose sanctions on plaintiff's counsel pursuant to

Rule 11 of the Federal Rules of Civil Procedure. For the reasons

discussed below, the motion to dismiss is granted in part and

denied in part, and the motion for sanctions is denied.

I.

For purposes of a Rule 12(b)(6) motion to dismiss, I take the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). Shabotinsky alleges that in May 2014, he held tickets for an August 24, 2014 Lufthansa flight from Chicago to Tel Aviv, Israel. The first leg of the flight was from Chicago to Frankfurt, Germany; the second was from Frankfurt to Tel Aviv.

According to Shabotinsky, he was notified on or about August 23, 2014 that the flight from Frankfurt to Tel Aviv had been cancelled and that he had been re-booked on another flight from Frankfurt to Tel Aviv.[1] The new flight's departure time was four hours later than the original flight's. Shabotinsky claims that he was "estranged" at Frankfurt International Airport while waiting for his connecting flight and incurred out-of-pocket expenses for food, refreshments, medications, and telecommunication services. Am. Compl. ¶ 5. He further alleges that he arrived in Tel Aviv almost five hours later than he had been scheduled to arrive on the original flight, and that as a result, he missed the event for which he had taken the trip.

---

[1] Lufthansa contends that the email was sent on August 21, 2014, and has submitted a copy of the email, which is dated August 21, 2014. Even if I were to take judicial notice of the email, however, it would not show that Shabotinsky received it on the date on which it was sent. In any case, the issues raised in this motion do not turn on the precise date on which Shabotinsky received the email.

Shabotinsky initially filed a ninety-two-page complaint alleging claims against Lufthansa under the Montreal Convention as well as Regulation No. 261/2004 of the European Parliament and European Council ("EU 261"). He also asserted claims for breach of contract. In addition to moving to dismiss the complaint, Lufthansa also sought sanctions based on the length of Shabotinsky's pleading and the asserted baselessness of certain of his claims. Shabotinsky was given leave to file an amended complaint, which ultimately dropped all claims save those arising under the Montreal Convention. The amended complaint asserts three such claims, each based on Article 19 of the Convention, which provides:

> The carrier is liable for damage occasioned by delay
> in the carriage by air of passengers, baggage or
> cargo. Nevertheless, the carrier shall not be liable
> for damage occasioned by delay if it proves that it
> and its servants and agents took all measures that
> could reasonably be required to avoid the damage or
> that it was impossible for it or them to take such
> measures.

Montreal Convention, art. 19.

Count I of the amended complaint is based on damages Shabotinsky and other alleged class members suffered as a result of the flight's delay. Counts II and III appear to be based on Lufthansa's failure to "meaningfully consider" Shabotinsky's and other class members' pre-suit "notices of claim" and settlement offers.

## II. Motion to Dismiss

### A.    Rule 8

Lufthansa argues that the amended complaint should be dismissed for failing to comport with Federal Rule 8(a)'s requirement that plaintiffs provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Lufthansa acknowledges that the current pleading has been considerably shortened (from over ninety pages to thirty-five) but it insists that the amended complaint is still too long for a dispute involving a flight delay of no more than five hours. While I agree that Shabotinsky's complaint could be more concise, it provides Lufthansa with fair notice of the nature of Shabotinsky's claims. *See, e.g.*, *Pumputiena v. Deutsche Lufthansa*, AG, No. 16 C 4868, 2017 WL 66823, *3 (N.D. Ill. Jan. 6, 2017) (declining to dismiss on the basis of Rule 8 a seventy-five page complaint drafted by plaintiff's counsel in this case, despite the fact that the "complaint is way too long, riddled with typographical and other errors, laced with irrelevant material, and poorly organized"). Accordingly, Lufthansa's motion to dismiss based on Rule 8 is denied.

### B.    Rule 12(b)(6)

Lufthansa additionally argues that the amended complaint fails to state a claim under Rule 12(b)(6) because Shabotinsky's causes of action are not covered by the Montreal Convention and

because he has failed to allege compensable damages under the Convention. Lufthansa also argues that Shabotinsky's class claims must be dismissed. I consider these contentions in turn.

**1. The Montreal Convention**

Lufthansa first argues that Shabotinsky's claims must be dismissed because they are not covered by the Montreal Convention. This is so, according to Lufthansa, because the Convention does not govern matters occurring prior to a flight's departure but instead applies only after "'the passenger presents herself to the carrier or its agents as ready to begin the air journey.'" Def.'s Mem. at 6 (quoting *Lathigra v. British Airways PLC*, 41 F.3d 535, 539 (9th Cir. 1994)). Lufthansa maintains that Shabotinsky's complaint is based on pre-departure "scheduling and ticketing issues," Def.'s Reply Br. at 6, not on a delay in his transportation or carriage. As a result, Lufthansa contends that Shabotinsky's dispute is governed by his contract with the airline (i.e., the Conditions of Carriage), rather than the Montreal Convention.[2]

I am unpersuaded. As another court in this district recently observed in rejecting the argument Lufthansa presents

---

[2] Lufthansa further argues that any claim under the Conditions of Carriage must fail because they expressly permit Lufthansa to make schedule changes. Because I conclude that Shabotinsky's claims arise under the Montreal Convention rather than the Conditions of Carriage, I do not address these arguments.

here, "nothing in Article 19 of the Montreal Convention suggests that it only applies to delays that occur after a plaintiff's initial flight takes off." *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 808 (N.D. Ill. 2016). Courts have frequently been called upon to decide whether a passenger's claim sounds in contract or arises under the Montreal Convention. Case authority makes clear that the answer to this question depends not on whether the plaintiff's claim arose before or after a flight's departure, but whether the airline failed completely to perform under the contract (by, for example, "bumping" a passenger or otherwise failing to transport him to his destination) or merely caused a delay in the passenger's arrival. Claims alleging nonperformance are regarded as claims for breach of contract; claims alleging delay are governed by the Convention. *See, e.g.*, *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 445 (7th Cir. 1987) ("This case is one of nonperformance of a contract. The Wolgels are not attempting to recover for injuries caused by their delay in getting to Acapulco. Rather, their complaint is based on the fact that, as far as the record shows, they never left the airport. Because the Wolgels' claim is for total nonperformance of a contract, the Warsaw Convention[3] is inapplicable."); *In re Nigeria Charter*

---

[3] The Warsaw Convention is the Montreal Convention's predecessor. As a result, courts rely on the Warsaw Convention in

*Flights Contract Litig.*, 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007) ("The plain language of Article 19 of the Montreal Convention indicates that it governs claims for delay, not nonperformance."); *Ratnaswamy v. Air Afrique*, No. 95 C 7670, 1998 WL 111652, at *4 (N.D. Ill. Mar. 3, 1998) (plaintiffs' claims fell within purview of Warsaw Convention because they were "not attempting to recover for total nonperformance of their contract with Air Afrique" but instead were "seeking compensation for damages they allegedly sustained as a result of their delay in leaving Africa"). Here, Shabotinsky does not allege that Lufthansa failed to perform its obligation to transport him to Tel Aviv; he maintains that Lufthansa failed to transport him to Tel Aviv on time. Because his claims are based on delay, not nonperformance, they fall under the Montreal Convention.

---

interpreting the Montreal Convention where the two conventions' provisions are similar. *See, e.g.*, *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014) ("Although designed to replace the Warsaw Convention, the Montreal Convention incorporates many of its substantive provisions. Accordingly, in interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same.") (citations omitted). The Warsaw Convention's provision relating to delays in carriage is essentially the same as the Montreal Convention's. *Compare* Warsaw Convention, Art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, luggage or goods.") *with* Montreal Convention, Art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.").

Lufthansa's reliance on *Lathigra v. British Airways*, is
misplaced. There, the plaintiffs were traveling from Seattle to
Madagascar via British Airways ("BA") with a connecting flight
on Air Mauritius from Nairobi, Kenya to Antananarivo,
Madagascar. Several days before the flight, the plaintiffs
confirmed their reservations with BA but BA failed to inform
them that the Air Mauritius flight had been discontinued. As a
result, the plaintiffs were stranded for several days in Kenya.
The plaintiffs brought a negligence claim against BA in state
court. BA removed the suit to federal court, arguing that the
claim was governed by the Warsaw Convention. The Ninth Circuit
disagreed, holding that the Warsaw Convention applied "only to
actions for delays related to the *performance* of the
international transportation." *Id*. at 539. Because the
plaintiffs' claim arose out of BA's confirmation of their
reservation several days before their flight, the Warsaw
Convention did not apply.

Unlike the plaintiffs in *Lathigra*, Shabotinsky does not
allege that Lufthansa was negligent in failing to inform him of
the changes to his flight. As already noted, his claims are
based on Lufthansa's failure to transport him to Tel Aviv on
time. Lufthansa cites the *Lathigra* court's remark that "[o]nce
the passenger presents herself to the carrier or its agents as
ready to begin the air journey, the Convention generally governs

liability for delays in the carrier's performance, and its provisions apply until completion of disembarkation at the destination airport." *Id*. at 539. But nothing in *Lathigra* suggested that the Warsaw Convention was never applicable to delays resulting from activity occurring prior to takeoff. In fact, the court expressly refrained from offering any opinion as to whether the Warsaw Convention applied to decisions regarding "changes and schedules and frequencies [] necessarily occurring hours or days before departure." *Id*. Hence, the fact that Shabotinsky's delay resulted from a scheduling change prior to his flight's departure does not place his claims outside the Montreal Convention's scope.

In short, I conclude that Shabotinsky's claims are based on delay rather than nonperformance and are therefore properly asserted under the Montreal Convention.

**2. Damages**

Lufthansa next argues that Shabotinsky's claims must be dismissed because he has failed to allege compensable damages. Lufthansa contends that the Montreal Convention allows recovery only for economic damages and asserts that Shabotinsky has failed to allege any such damages. I disagree.

It is true that Shabotinsky's amended complaint appears to seek recovery for some non-economic damages. For example, in various places, he appears to request compensation for

"inconvenience, tardiness, loss of time, loss of pre-planned sight-seeing activities, ... [and] psychical exhaustion." Am. Compl. ¶ 126. In his response brief, however, Shabotinsky "urges this Court to note that the Plaintiff is only requesting award of actual economic damages." Pl.'s Resp. Br. at 11. Thus, to the extent that Shabotinsky may formerly have sought relief for non-economic damages, I understand him now to have abandoned the request. For present purposes, the relevant point is that Shabotinsky alleges some forms of harm that are indisputably economic (e.g., out-of-pocket expenses for food, Am. Compl. ¶ 52). While the value of Shabotinsky's claims is potentially quite limited, the harm he alleges is compensable under the Convention.

In the alternative, Lufthansa argues that the amended complaint alleges economic damages of only $150 and asks that Shabotinsky's damages be capped at that amount. In point of fact, however, Shabotinsky offers several different damage amounts. In some places, he claims that he and putative class members suffered "out-of-pocket, Per Diem and general damages in the sum of $150." Am. Compl. ¶ 104. In other places, he asserts that he and other class members "were needlessly subjected to compensable damages in the set amount of 4694 SDR[4] or $6467.94

---

[4] "SDR" refers to "Special Drawing Rights," "an artificial currency, the exchange rate for which is published daily by the

per class member or alternatively in the sum of in the sum of $300 or in the sum to be ascertained and proven at appropriate stages of this litigation." Am. Compl. ¶ 105. In light of this ambiguity, capping Shabotinsky's damages at $150 would be inappropriate.

Accordingly, Lufthansa's motion to dismiss is denied insofar as it is based on Shabotinsky's purported failure to allege economic damages.

### 3.   Counts II and III

Count II of Shabotinsky's complaint is styled as a "Claim for Failure to Meaningfully Consider Pre-Suit Notices of Claims Submitted to Defendant per Art. 19 and 22(6) of the Montreal Convention and Failure to Pay for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19 and 22(6) of the Montreal Convention"; Count III is styled as a "Cause of Action Under Art. 19 and 22(6) of the Montreal Convention for Failure to Comply with Statutory Duty to Meaningfully [sic] Pre-Suit Notices of Claims and Demands for

International Monetary Fund." *Ekufu v. Iberia Airlines*, No. 12 CV 6669, 2014 WL 87502, at *4 (N.D. Ill. Jan. 9, 2014) (quotation marks omitted). "The value of an SDR fluctuates based on the global currency market, and, under the Montreal [Convention], Art. 23, is determined at the date of judgment." *Id*. (quotation marks omitted). For the week of March 23, 2017, one SDR is equal to .734 U.S. Dollars. *See* https://www.imf.org /external/np/fin/data/rms_five.aspx.

Pre-Suit Settlements Submitted to Defendant Pursuant to Art. 22(6) of the Montreal Convention."

Both counts are based on Shabotinsky's apparent assumption that Article 22(6) of the Convention requires plaintiffs to serve airlines with formal "Notices of Claim" or demands for settlement prior to bringing suit, and that air carriers are required to give "meaningful consideration" to such claims and demands. This is mistaken. Article 22(6) provides:

> The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest. The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of the litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later.

Montreal Convention, art. 22(6).

As the plain language of the article makes clear, it merely provides that the limits on damages otherwise applicable under the Convention do not prevent courts from awarding fees and costs to a prevailing party -- so long as the plaintiff's damages are less than any settlement amount previously offered by the air carrier. *See, e.g.*, *Bytska v. Swiss Int'l Air Line, Ltd.*, No. 15-CV-483, 2016 WL 6948375, at *3 (N.D. Ill. Nov. 28, 2016) ("The text of the first sentence of Article 22(6) does no

more than authorize a court to apply its domestic law as the rule of decision when a party requests costs and fees."). Article 22(6) does not require plaintiffs to submit pre-suit notices of claim or settlement demands to defendants, much less does it impose a "statutory duty" to "meaningfully consider" such claims and demands. *See, e.g.*, *Pumputiena*, 2017 WL 66823, at *7 ("[Article 22(6)] is designed to encourage settlement by exempting litigation-related attorney fees and expenses allowed under domestic law from the Montreal Convention's damage ceilings, except where the airline's offer of judgment exceeds the plaintiff's ultimate recovery, but it does not require the airline to offer a settlement or even to negotiate in good faith.").

Because Counts II and III seek to hold Lufthansa liable for violating a non-existent legal requirement, both claims are dismissed.

### 4. Class Action Allegations

Lastly, Lufthansa argues that Shabotinsky's class action claims should be dismissed. The amended complaint appears to describe two classes. The first ("Class 1") consists of all persons who had confirmed reservations on Flight LH 690 from Frankfurt to Tel Aviv, and who: (1) submitted a pre-suit demand for compensation that Lufthansa improperly rejected or failed meaningfully to consider; (2) were not "adequately informed by

13

Lufthansa of the delay or cancellation less than seven days before the scheduled time of departure and [were] not offered meaningful re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival"; Am. Compl. ¶ 66(a)(6); (3) were affected by the delay or cancellation for at least three hours; and (4) did not receive advance notice of the cancellation. The second class ("Class 2") is identical to the first, except that it applies to "any international flights between countries [that are] signatories to the Montreal Convention as operated by Lufthansa since August of 2014." *Id*. ¶ 66(a)(2).

Shabotinsky contends that Lufthansa's motion to dismiss the class action claims is premature. It is true that "[a]s a general rule, whether a suit can be maintained as a class or collective action is determined not on a Rule 12(b)(6) motion, but on a motion to certify a class action under Rule 23." *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 C 8202, 2012 WL 1719793, at *2 (N.D. Ill. May 15, 2012). Nevertheless, the Seventh Circuit has observed that courts have an "independent obligation to decide whether an action brought on a class basis is to be so maintained," and that a court may therefore "deny class certification even before the plaintiff files a motion requesting certification," *Kasalo v. Harris & Harris, Ltd.*, 656

F.3d 557, 563 (7th Cir. 2011); *see also McCrary v. Stifel,*
*Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012)("[C]lass
claims that fail to meet the requirements of Rule 23 may be
properly dismissed by granting a Rule 12(b)(6) motion."). I
consider each class separately.

**(a) Class 1**

Lufthansa argues that the class claims pertaining to Class
1 must be dismissed on several grounds. First, Lufthansa takes
issue with requirement (1), which limits the class to those who
submitted a pre-suit notice of claim or settlement demand to
Lufthansa. This requirement seems to be based on Shabotinsky's
mistaken notion, discussed above, that Article 22(6) of the
Montreal Convention requires plaintiffs to present carriers with
such notices and demands prior to filing suit. However, the fact
that the Convention in fact requires no such pre-suit
communications at most shows only that requirement (1) is
superfluous; it does not show that the requirement vitiates the
class or warrants dismissal of the claims based on it.

Lufthansa also maintains that the claims based on Class 1
must be dismissed in light of requirement (4), which limits the
class to those who did not receive advance notice of the
flight's cancellation. Lufthansa argues that the flight from
Frankfurt to Tel Aviv was rescheduled, not cancelled. In
addition, Lufthansa contends that Shabotinsky received advance

notice of the flight's cancellation (or rescheduling), and that, as a result, he is excluded from the class by virtue of requirement (4).

These arguments are largely terminological. There is nothing especially significant about the complaint's use of the term "cancelled" rather than "rescheduled." Shabotinsky appears to contend that his original flight from Frankfurt to Tel Aviv was cancelled and then rescheduled; Lufthansa contends that the flight was simply rescheduled. Lufthansa offers no reason for thinking that this is anything but a verbal disagreement. As for requirement (4)'s reference to "advance notice," the amended complaint does not clearly define what the term entails. As noted above, Shabotinsky was alerted to the changes to his itinerary no earlier than three days before his scheduled departure time. If "advance notice" means more than three days' notice, Shabotinsky would not have received advance notice and would not be excluded from the class. Thus, requirement (4)'s references to "cancellation" and "advance notice" do not warrant dismissal of the class claims based on Class 1.

Nevertheless, I have concerns regarding Class 1's viability. At a hearing on Lufthansa's motions to dismiss and for sanctions, plaintiff's counsel further limited the potential class. When questioned as to how he would prove his case with respect to non-American passengers who took only the flight from

Frankfurt to Tel Aviv, and whether this court would even have jurisdiction over these people, counsel stated that his class was limited to American passengers who took both flights, the flight from Chicago to Frankfurt, and the second flight from Frankfurt to Tel Aviv. While I am somewhat skeptical as to whether that group, if there is a group at all, will be numerically sufficient to constitute a class for purposes of Fed. R. Civ. P. 23, I will not dismiss the claims pertaining to this potential class at this time.

**(b)    Class 2**

Class 2 suffers from the opposite problem and raises more thoroughgoing concerns. As noted above, Class 2 is identical to Class 1, except that it essentially applies to all international Lufthansa flights since August 2014. Such a class would encompass disparate claims based on delays arising in connection with hundreds of flights. A class of such proportions is not maintainable. Plaintiff's counsel proposed a similar class in *Pumputiena*, which asserted claims under the Montreal Convention against United Airlines as well as Lufthansa.[5] There, the proposed class consisted of all passengers on any international

---

[5] The claims in *Pumputiena* were originally combined in a single complaint along with those in this case and those in *Godun v. United Airlines, Inc.*, 16 C 4869 (N.D. Ill. filed Dec. 9, 2015). Judge Gettleman severed the actions. *See Serpytiene et al v. United Airlines Inc.*, No. 15 C 832 (N.D. Ill. filed Jan. 28, 2015), ECF No. 79.

United flight since June 8, 2015. *Id*. at *2. In granting United

Airlines' motion to strike[6] the claims based on the proposed

class, the court explained:

> The question that is apt to drive the resolution of
> the litigation, is whether United, as Article 19
> states, took all measures that could reasonably be
> required to avoid the damage or that it was impossible
> for it ... to take such measures. If so, then United
> is not liable under Article 19, and if not, then
> United likely is liable under Article 19.... [T]hat
> question might possibly be answered on a flight-by-
> flight basis, but not across the hundreds or thousands
> of delayed flights since June 2015. It follows that
> the ... [class] could not possibly be certified,
> meaning that it is appropriate to strike those class
> allegations at the pleading stage.

*Id*. at *10 (citation and quotation marks omitted). For the same

reasons, the class claims based on Class 2 in this case must be

dismissed.

Shabotinsky's sole argument in response is a lengthy

quotation from *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F.

Supp. 3d 798 (N.D. Ill. 2016), in which the court declined to

address a motion to dismiss class claims prior to a motion for

class certification. As Lufthansa points out, however, the

classes in *Dochak* were not challenged on the basis asserted

---

[6] Although brought by United Airlines as a motion to *dismiss* the
class claims, the court construed it as a motion to strike
because United had not moved to dismiss all of the plaintiff's
claims against it. *See Pumputiena*, 2017 WL 66823, at *6
("Although United moves to 'dismiss' ... the putative class
claims, because it does not move to dismiss all of Pumputiena's
claims against it, the court construes that part of the motion
as a motion to strike under Civil Rule 12(f).").

here. Rather, the defendant airline in that case advanced only a more general argument that claims arising under the Montreal Convention and EU 261 required individualized assessment and were therefore inappropriate for class treatment.

For these reasons, I dismiss Shabotinsky's class claims insofar as they relate to Class 2 but not as to Class 1.

### III. Motion for Sanctions

As noted above, Lufthansa has separately moved for Rule 11 sanctions against Shabotinsky's counsel. Specifically, Lufthansa asserted that: (1) Shabotinsky's counsel had no objectively reasonable basis for asserting claims under European Union Regulation (EC) No. 261/2004 ("EU 261"); (2) he lacked any basis for claiming that the Montreal Convention establishes a "set amount" of recovery for violations of Article 19; (3) the complaint's length, at ninety-two pages, violated Fed. R. Civ. P. 8 and is part of a "pattern of inundating Lufthansa with unmanageable court filings"; and (4) that Shabotinsky's counsel had no objective, good-faith ground for bringing the claims on a class-wide basis.

In a previous order, I declined to impose sanctions based on ground (1) because Shabotinsky abandoned his EU 261 claims in his amended pleading. Likewise, I denied the motion for sanctions as to ground (3) because the length of the amended complaint had been reduced to roughly a third of the original

complaint's length. I deferred ruling on grounds (2) and (4) pending a response from Shabotinsky's counsel.

Ground (2) claims that Shabotinsky's complaint posits that the Montreal Convention establishes a "set amount" of recovery -- i.e., 4,694 SDR -- for violations of Article 19 of the Montreal Convention.[7] As Lufthansa correctly points out, this figure represents a cap on damages, not a specified amount to be awarded for every violation of Article 19. Because there is no basis for the "set amount" theory, Lufthansa argues that Shabotinsky's counsel should be sanctioned for asserting it.

In response, Shabotinsky's counsel agrees that the 4,694 SDR figure represents a cap on recovery and states that he did not intend to suggest otherwise. He notes that the complaint itself describes the 4,694 SDR amount as a cap. *See* Comp. ¶ 82 (asserting that "the Montreal Convention provides a cap of 4694 SDR on recoverable damages."); Am. Compl. ¶¶ 12, 34. However, Shabotinsky's counsel also uses the expression "set amount" in describing the figure. *See, e.g.*, Compl. ¶¶ 172, 192, 218, 305 (alleging that "each and every member of class [was] needlessly subjected to compensable damages in the set amount of 4694 SDR"). This is true even in the amended complaint, which was

---

[7] Under the current exchange rate, 4,694 SDR is equivalent to roughly U.S. $3,445.

filed after Lufthansa raised the issue in its motion for sanctions. *See* Am. Compl. ¶¶ 105, 125.

It is unclear whether Shabotinsky's counsel's continued reference to a set amount of recovery reflects a linguistic confusion, poor draftsmanship, or a substantive misapprehension of the law. Nevertheless, the issue is a relatively minor one, and it does not appear that opposing the complaint's purported "set amount" theory has required significant effort on Lufthansa's part.

Ground (4) of Lufthansa's motion similarly contends that Shabotinsky's counsel lacked any objective, good-faith basis for asserting Shabotinsky's claims on class-wide basis. Based on the discussion of the class claims above, this contention appears to be only partially true. While Class 2 of the amended complaint is untenable on its face, Class 1 is not. Thus, at least at this juncture, it is not possible to say as a general matter that Shabotinsky's counsel lacked any good-faith basis for asserting his claims on a class-wide basis.

In short, while Lufthansa's complaints are not without merit, I conclude that they do not warrant an award of fees and costs in this case.

IV.

For the reasons above, I deny Lufthansa's motion to dismiss the amended complaint as to Count I, but grant the motion as to

Counts II and III. I dismiss Shabotinsky's class claims relating to Class 2 and direct Shabotinsky to file a motion for the certification of Class 1 within ninety days of the date of this memorandum opinion and order, supported by facts obtained in discovery. I deny Lufthansa's motion for fees and costs.

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 27, 2017