**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DAVID SHABOTINSKY**                                    Case No.  **1:16-cv-4865**

                              **Plaintiff**

            **vs.**                                                      **HON. ELAINE E. BUCKLO**

**DEUTSCHE LUFTHANSA AG**

                              **Defendant**
_____

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION
_____

   **NOW COMES** the above-named Plaintiffs, DAVID SHABOTINSKY, individually

and on behalf all other passengers of flight LH 690 operated by Lufthansa AG from

Frankfurt to Tel Aviv on August 25, 2014,  by and through their counsel of record,

Attorney Vladimir M. Gorokhovsky of GOROKHOVSKY LAW OFFICE, LLC, and

upon all the files, records and proceedings heretofore had herein, and pursuant to the Rule

23 of Federal Rules of Civil Procedure respectfully moves this Honorable Court for an

Order of Certification of Class of Passengers of canceled flight LH 690.  In further legal

and factual support of this Motion for Class Certification the above-named Plaintiffs

hereby propounds their Memorandum of Law and Facts, stating as follows:

## I.      INTRODUCTION:

   Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Plaintiffs respectfully

move  for an order certifying this  case as a class action. As demonstrated below, this

action satisfies all  applicable requirements under Rule 23 (a) for class treatment.

First, with tens of thousands of members, the proposed Class is sufficiently numerous to make joinder impracticable. Second, there are questions of law and fact common to the proposed Class. Second DEUTSCHE LUFTHANSA AG already has raised numerous common issues that would benefit from class application in the five dispositive motions it has filed prior to class certification. Third, the claims of the proposed Class Representative Mr. Shabotonsky are typical of the Class like all class members, they had confirmed international airfare tickets for flight on which was cancelled. Fourth, as demonstrated in the prosecution of this action thus far, Mr. Shabotinsky and his counsel will fairly and adequately protect the interests of the proposed Class. In addition, the requirements of Rule 23(b)(3) are met because questions of law and fact common to the proposed Class predominate over any issues affecting individual Class members, and the class action procedure is the superior method of resolving the claims and defenses in this action. Indeed, this case is particularly amenable to class treatment because of the standardized nature of the eligibility requirements under Art. 19 of the Montreal Convention on particular issue of defendant's conduct to mitigate damages of its passengers caused by delayed departures and cancellations of defendant international flight, coupled with the detailed flight and passenger data maintained by Iberia in three electronic databases the names of which are yet unknown to the plaintiffs.

Once the common issues of defendant's obligation under Art. 19 of the Montreal Convention on the issue of defendant's action to mitigate it's passengers damages can be ascertained or checked against electronic data maintained by Lufthansa. Even where individual issues may arise, they can be resolved by reference to the flight itinerary information without the need for mini-trials or subjective determinations. Class treatment

is undoubtedly a superior method of resolving the claims and defenses in this action. Art. 19 and 22 of the Montreal Convention, being an international treaty, is the supreme law of this land and as such intended to provide heightened consumer protection through straightforward requirements. Yet on multiple occasions Lufthansa has thwarted the purposes of Art. 19 and 22 of the Montreal Convention by engaging in a war of attrition that individual claimants cannot sustain and by improperly using the affirmative defense of "all actions reasonably taking" where individual claimants cannot obtain the discovery needed to respond. Plaintiff's believes that defendant's claims database shows that it denies monetary compensation for over ninety percent of claims of all types for flights within the class definition, and that less than one percent of passengers on class flights receive any monetary compensation at all (much less the compensation required under Art. 19 and 22 of the Montreal Convention). U.S. passengers are at an even greater disadvantage, as they are less familiar with their rights under Art. 19 and 22. Indeed, when the Mr. Shabotinsky filed a claim with Lufthansa, the above-named defendant simply ignored it. For the reasons detailed below, Plaintiffs respectfully request this Court grant the instant motion and 1) certify the Proposed Class, 2) appoint Plaintiffs Mr. Shabotinsky as Class Representatives, and 3) affirm Plaintiffs' chosen counsel as counsel for the Class.

## II. BACKGROUND AND STATEMENT OF FACTS:

### A. DEUTSCHE LUFTHANSA AG IS OBLIGATED BY ART. 19 OF THE MONTREAL CONVENTION AND ITS CONDITIONS OF CARRIAGE TO PROVIDE COMPENSATION TO PASSENGERS FOR DEFINED CATEGORIES OF CANCELLED AND DELAYED FLIGHTS:

1.  **Art. 19 and 2 of the Montreal Convention Provides Compensation to Certain Passengers Affected by Flight Cancellations and Long Delays:**

This Court is aware that the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), *reprinted in* S. Treaty Doc. No. 106-45, is the supreme laws of this land, governing liabilities of an airlines for damages caused to its passengers by delays and cancellations of international airfare contracts of carriages. The Montreal Convention was ratified in the USA on November 4, 2003, whereby the Unites States Senate ratified the new legal regime known officially as the Montreal Convention or "Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999,"[1] and is governing the field of international airfare transportation since its adoption by the United States Senate on November 4, 2003.[2] See, *generally*, Multilateral Convention for International Carriage by Air, Montreal May 28, 1999., S. Treaty Doc. No. 106-45, reprinted in1999 WL 33292734 (2000). [3] The Montreal Convention is an international treaty, exclusively governing the rights and liabilities of passengers and

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, reprinted in S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000)

[2] Ehrlich v. American Airlines, Inc., 360 F.3d 366, C.A.2 (N.Y.), 2004 (holding that the Montreal Convention is not an amendment to the Warsaw Convention, rather, the Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention)(also holding that upon entry into force, the Montreal Convention will take precedence over the Warsaw Convention and any of its amendments and related instruments, and as a practical matter will supersede the private inter-carrier agreements, when the State or States relevant in a particular accident are party to the new Convention)

[3] *See* Press Statement, United States Department of State, Ratification of the 1999 Montreal Convention (Sept. 5, 2003), *available at http://www.state.gov/r/pa/prs/ps/2003/ 23851pf.htm;* Press Release, United States Department of Transportation, United States Ratifies 1999 Montreal Convention, Putting Treaty Into Effect (Sept. 5, 2003), *available at http://www.dot.gov/ affairs/dot10303.htm.*

carriers in international air transportation, providing remedy for claims arising out of the carriage of international passengers by air. [4] The Montreal Convention [5] unified the law that had developed under the older Warsaw Convention [6] and superseded the Warsaw Convention. The Montreal Convention is the product of a United Nations effort to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and inter-carrier agreements of which the Warsaw Convention system of liability consists.[7] The Montreal Convention is not an amendment to the Warsaw Convention, but rather takes precedence over the Warsaw Convention and any of its amendments and related instruments. [8] The Montreal Convention unifies and replaces the system of liability that derives from the Warsaw Convention, explicitly recognizing the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.[9] Even though the Montreal Convention is directed more at consumers, it does not alter the original goal of the Warsaw Convention of maintaining limited and predictable damage amounts for airlines. [10] Pursuant to Article 1 the Montreal Convention applies to international airfare flights between countries – signatories to the

---

[4] *See*, Montreal Convention Art. 29; *also see* El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 162, 174-75 (1999); Booker v. BWIA West Indies Airways, 2007 WL 1351927 at *2 (E.D.N.Y. May 08, 2007), aff'd, 307 Fed. Appx. 491 (2d Cir. Jan. 13, 2009) (construing Montreal Convention).
[5] The Montreal Convention is available in the UNITED STATES CODE SERVICE (U.S.C.S.) volume titled International Agreements at 635 (2007). It is also available at S. Treaty Doc. No. 106-45, 1999 WL 33292734 at 29-45.
[6] *See*, Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [hereinafter Warsaw Convention],
[7] Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 780 (7th Cir. 2008).
[8] Ehrlich, 360 F.3d at 366.
[9] Sompo, 522 F.3d at 780.
[10] Id. at 781.

Convention, [11] and applies to all international carriage of persons, baggage or cargo performed by aircraft for reward. Id. 1(1). Furthermore, the term "International carriage" is defined as any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage . . ., are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Id., art. 1(2). Importantly, the Montreal Convention provides for the cause of action for damages resulted from delays in international carriage of passengers, their baggage and of cargo. Specifically, the Article 19[12] of the Convention provides:

> "The Carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

Equally importantly that Article 19 creates potential liability only for "damage occasioned by delay".[13] Although the carrier is not liable for the delay itself [14] yet the carrier is liable to economic damages caused by such delays and cancellations of international air fares. Id. To set forth a viable claim under Article 19, a plaintiff must show that they suffered any type of "compensable damage occasioned by delay" that is recoverable under Article 19. As to all legally cognizable damages, a plaintiff can

---

[11] http://legacy.icao.int/icao/en/leb/mtl99.pdf

[12] Id. Art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.").

[13] Montreal Convention Art. 19

[14] Paradis v. Ghana Airways, Ltd., 348 F. Supp. 2d 106, 114 (S.D.N.Y. 2004), aff'd, 194 Fed. Appx. 5 (2nd Cir. August 18, 2006).

recover compensatory actual, general, special damages, including economic damages. [15]

Although "purely emotional damages" such as damages for frustration, anguish, physical

or mental upset independent of any physical injury may not be recovered under the

Montreal Convention, courts have allowed recovery for physical and financial injuries,

and even inconvenience.[16]   Importantly, all recoverable economic damages under Art. 19

and 22(2) of the Montreal Convention are limited by the cap of  4694 SDR on

recoverable damages.  In particular, Art. 22(1) set forth the cap on damages and states in

pertinent part that:

> "In the case of damage caused by delay as specified in Article 19 in the
> carriage  of persons, the liability of the carrier for each passenger is
> limited to 4 150 [17] Special Drawing Rights.

This limitation of liability on recoverable damages is subject to periodic adjustment
and alignment with inflation rates.

### 2.   Lufthansa is Obligated to Abide by Art. 19 of the Montreal Convention by operation of law:

---

[15] <u>Ikekpeazu v. Air France</u>, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4
(D. Conn. Dec. 6, 2004)(Plaintiff can also recover loss of work damages resulting at
financial injury as economic damages).

[16] Cf., <u>Daniel v. Virgin Atl. Airways Ltd</u>, 59 F. Supp. 2d 986, 992 (N.D. Cal. 1998)
(denying recovery for emotional injuries, but permitting claims for physical injuries and
economic damages, including inconvenience); <u>Ikekpeazu</u>, 2004 U.S. Dist. LEXIS 24580
at *4 (recognizing financial injury as a cognizable claim, but not emotional injury). <u>Lee
v. American Airlines, Inc.</u>, No. 3:01-CV-1179-P, 2002 U.S. Dist. LEXIS 12029 at *13
(N.D. Tex. July 2, 2002), aff'd, 355 F.3d 386, 387 (5th Cir. Tex. 2004)( Yet, some court
are reluctant to allow recovery for inconvenience.).

[17] This limit was increased up to 4694 SDR (http://www.iatatravelcentre.com/e-ticket-
notice/General/English/)
 On June 30, 2009, ICAO adjusted the liability limits set forth in Articles 21 and 22 of the
Montreal Convention due to inflation. Accordingly, effective December 30, 2009, the
liability limit set forth in Article 22(2) was increased from 1,000 SDRs to 1,131 SDRs.
*See* U.S. Department of Transportation, *Inflation Adjustments to Liability Limits
Governed by the Montreal Convention Effective December 30, 2009*, 74 F.R. 59017-18
(Nov. 16, 2009).

Since both the United States and Republic of Germany are signatories of the Montreal Convention, thus the above-named defendant is obligated to comply with specific mandate of the Montreal Convention.

## B. DEFENDANT MAINTAINS EXTENSIVE DATA RELATED TO FLIGHTS AND PASSENGERS DURING THE CLASS PERIOD, ENABLING CLASS MEMBERS TO BE IDENTIFIED AND CONFIRMED:

As is common in the airline industry, Lufthansa maintains extensive electronic data related to each flight it operates as well as each passenger on those flights. Indeed European and U.S. laws require maintenance and reporting of flight data related to cancellations and delays. See, EU Commission Regulation No. 691/2010 ("EU 691") (Ex. 3); 14 C.F.R. § 234.4; see also Dept. of Trans., Reporting the Causes of Airline Delays and Cancellations, 67 Fed. Reg. 70535 (Nov. 25, 2002). Additionally, Lufthansa is required to collect and maintain certain passenger data. See 14 C.F.R. §§ 1560.101, 1560.111; *see also* Dept. of Homeland Sec., Trans. Sec. Admin., Secure Flight Program, Part II, 73 Fed. Reg. 64018 (Oct. 28, 2008).

This data provides a means by which class members may be identified, and claims may be easily vetted. Consistent with these laws, Lufthansa maintains several databases of specific interest to this action: (a) passenger data in a database, and (b) flight information in database.

### a. Defendant Has Rigorous Procedures for Ensuring that IATA Codes are Assigned Accurately to Delayed and Cancelled Flights:

The plaintiff believes that Lufthansa has rigorous, detailed procedures for assigning IATA Delay/Cancellation Codes to ensure their accuracy. The plaintiff also believes that Lufthansa also provides monthly reporting of its IATA Coding or "punctuality data" for

all flights it operates to the Central Office for Delay Analysis ("CODA") of

EUROCONTROL. [18]

### b. Defendant is Required by Law To Report Manufacturing Defects and Sabotage Events that Impact Flight Safety:

EU Law and German law require that Lufthansa "have a system for collecting,

investigating and analyzing reports of and information related to failures, malfunctions,

defects or other occurrences which cause or might cause adverse effects on the

continuing airworthiness of the product, part or appliance." EU Commission Regulation

1702/2003 ("EU 1702"), §21.A3(a). Relevant information must "be made available to all

known operators of the product, part or appliance. . . ." Id. To achieve that end,

Lufthansa must report occurrences to EU and German officials, utilizing a standardized

Technical Occurrence Report form "not later than 72 hours after the identification of the

possible unsafe condition, unless exceptional circumstances prevent this." Id. at

subsection (b)(2). Specifically, where a design or manufacturing defect is implicated in

the malfunction, the reporting entity is required to conduct its own investigation into the

cause of the malfunction and report it to the EASA. Id.

### C. FACTS SPECIFIC TO PROPOSED CLASS REPRESENTATIVES:

Since May of 2014 the above-named Plaintiff, DAVID SHABOTINSKY was holding

confirming airfare tickets for international airfare transportation on August 24, 2014 from

Chicago Illinois to Tel Aviv, Israel via connecting stop on August 25, 2014 at Frankfurt,

Germany. On or about August 23, 2014 the above-named Plaintiff was notified that his

---

[18] EUROCONTROL, the European Organization for the Safety of Air Navigation, is an intergovernmental organization made up of 39 EU Member States and the European Community. See http://www.eurocontrol.int

flight LH 690 to be operated by Lufthansa AG from Frankfurt to Tel Aviv on August 25, 2014 was canceled by Lufthansa AG. At that time Mr. Shabotinsky was re-booked on another flight departing from Frankfurt four hours later of the time of initial departure. Thereafter on or about August 25, 2014, while being estranged at Frankfurt International Airport, Mr. Shabotinsky was not provided with any meaningful care by Lufthansa AG. While being estranged at Frankfurt International Airport for excess of four hours, Mr. Shabotinsky was forced to expend out-of pockets expenses for procurement of local food, refreshments, medications and telecommunication services in the sum to be ascertained and proven at trial. Subsequent to prolonged interruption of his international airfare, Mr. Shabotinsky finally arrived at Tel Aviv on the middle of the night being almost 5 hours late of her pre-bargained arrival. Due to such late arrival to the Tel Aviv on the middle of the night, Mr. Shabotinsky missed the morning educational orientation at University of Tel Aviv, which was primary purpose of his international airfare travel. At all times material hereto the above-named defendant Deutsche Lufthansa AG was duly served with formal Notices of Claims against the above-named defendant in accordance with Article 22(6) of the Montreal Convention for damages caused by their breach of transportation agreement and delay in international transportation. Said notice of claims was rejected by Deutsche Lufthansa AG.

## II.  LEGAL ANALYSIS:

### A.  APPLICABLE LEGAL STANDARD:

A court's analysis of whether to certify a class pursuant to Rule 23 is a two-step process. First, a plaintiff must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4)

adequacy of representation. <u>Messner v. Northshore Univ. Healthsystem</u>, 669 F.3d 802, 811 (7th Cir. 2012). Upon a finding that the requirements of Rule 23(a) have been met, a plaintiff must then demonstrate that a class is maintainable under one or more of the three alternatives set forth in Rule 23(b). Id. In this case, Plaintiffs seek certification under Rule 23(b)(3): that common questions predominate and a class action is a superior method of adjudication. Importantly, in considering Plaintiffs' instant motion, the question before the Court is not whether Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. <u>See</u> <i>id</i>. at 811; <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974).

Stated another way, "a court may not decline to certify a class merely because it believes the class's claims will fail on the merits" since (a) "it is unlikely that discovery regarding the merits of a claim will be complete by the time the court is called upon to certify a class" and (b) "[a]ny consideration of the merits at the class certification stage also runs the risk of supplanting the jury as the finder of fact." <u>Messner</u>, 669 F.3d at 823. The class certification inquiry is circumscribed to determining the types of evidence that would ultimately be used to determine Plaintiffs' claims, as opposed to the content of that evidence. <u>See</u>, <u>Messner</u>, 669 F.3d at 808 ("[I]t is important not to let a quest for perfect evidence become the enemy of good evidence"). In sum, "[w]here there are common issues and the accuracy of the resolution of those issues 'is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant - specific issues to individual follow-up proceedings.'" <u>Pella Corp. .v. Saltzman</u>, 606 F.3d 391, 394

(7th Cir. 2010)("Saltzman II") (*quoting* <u>Mejdrech v. Met-Coil Sys. Corp.</u>, 319 F.3d 910, 912 (7th Cir. 2003)).

### B.   THE CLASS DEFINED:

With this motion, Plaintiff is seeking certification of a class of persons residing in the United States who meet the following requirements: (1)  Such person had a confirmed reservation on a LH 690 to be operated by Lufthansa AG from Frankfurt to Tel Aviv on August 25, 2014; (2)  Such person's flight itinerary meets one of the following two criteria: (a) Cancelled flights: The flight was cancelled, and the Plaintiff believes that Lufthansa coded the cancellation with a Class IATA Code; and the Plaintiff further believes Lufthansa did not file a Technical Occurrence Report for the flight; or (b) Delayed flights: The arrival of the flight was delayed for more than 24 hours or more;; and (3) Such person has not received  full compensation in the amount set forth in Article 19 of the Montreal Convention. Excluded from the Class are Lufthansa, its parents, subsidiaries, affiliates, officers,  directors and employees, any entity in which Lufthansa has a controlling interest, and all customers who make a timely election to be excluded. As anticipated,  the class definition set forth in the Complaint will be revised and refined based upon information learned during class discovery, which was not yet commenced. <u>See</u>, <u>Jones v. Nat'l Council of YMCA</u>,  2012 U.S. Dist. LEXIS155090, *4 (N.D. Ill. Oct. 30, 2012); <u>Butler v. Sears, Roebuck and Co.</u>, 702 F.3d 359, 362-363 (7th Cir. 2012); *see also* <u>Schorsch v. Hewlett-Packard Co.</u>, 417 F.3d 748, 750 (7th Cir. 2005). <u>Holtzman v. Turza</u>, 2009 U.S. Dist. LEXIS 95620, *14 (N.D. Ill. Oct. 14, 2009) ("'[T]he existence of individualized defenses does not preclude class certification.'" (citations omitted)).

### C. AS CERTAINABILITY:

#### 1. An Identifiable Class Exists If Its Members Can be Ascertained by Reference to Objective Criteria:

"It is axiomatic that for a class action to be certified a 'class' must exist."

Simer v. Ros, 661 F.2d 655, 669 (7th Cir. 1981); *see also* Oshana v. Coca-Cola Co., 472

F.3d 506, 513 (7th Cir. 2006). An identifiable class exists if its members can be

ascertained by reference to objective criteria. Harris v. comScore, Inc., 2013 U.S. Dist.

LEXIS 47399, *23 (N.D. Ill. Apr. 2, 2013); Boundas v. Abercrombie & Fitch, Inc., 280

F.R.D. 408, 417 (N.D. Ill. Mar. 7, 2012). Furthermore, it is not fatal for a class definition

to require some inquiry into individual records, as long as the inquiry is not so daunting

as to make the class definition insufficient. Jamison v. First Credit Servs., Inc., 2013 U.S.

Dist. LEXIS 43978, *52 (N.D. Ill. Mar. 28, 2013); see also Searcy v. eFunds Corp., 2010

U.S. Dist. LEXIS 4334, *18-19 (N.D. Ill. Jan. 20, 2010) ("[T]he arduousness involved in

combing through data to determine whether putative class members meet the objective

criteria of class membership does not render a class unascertainable"). Courts in this

District regularly find that the ascertainability requirement can be met when the definition

is premised on objective information and particularly where some of the information is

contained in the defendant's records and/or databases. See, e.g., Harris, 2013 U.S. Dist.

LEXIS 47399, at *24 ("[T]he parties agree that Defendant possesses contact

information, in the form of e-mail addresses, for some portion of the proposed Class and

Subclass. That portion of the proposed Class at least, is readily ascertainable"); Searcy,

2010 U.S. Dist. LEXIS 4334, at *18-19 ("Membership in the ...class can be assessed by

using solely objective criteria"); Saltzman v. Pella Corp., 257 F.R.D. 471, 476 (N.D. Ill.

2009) ("Saltzman I"), aff'd by Saltzman II, supra ("Because the class can be relatively

easily ascertained through a combination of the use of sales records, publication of notice, and verification by photograph, [the court finds] that an identifiable class exists"). Here, it is anticipated that Lufthansa will argue that there are limited aspects of the class definition that cannot be ascertained from Lufthansa's electronic databases.

This argument ignores that courts regularly allow individuals to establish class membership by submitting an affidavit, statement, or claim form even if class membership cannot be corroborated by any of the defendants' records. See, Harris, 2013 U.S. Dist. LEXIS 47399, at *25-26; see also Searcy, 2010 U.S. Dist. LEXIS 4334, at *23 ("Defendants again misconstrue the ascertainability requirement as relating to the means used to identify potential class members instead of the criteria used to distinguish members of the class from non-members"); Saltzman I, 257 F.R.D. at 475-476 ("'While the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action, the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member.'" (citations omitted)). In other words, the mere possibility that every class member may not be identified within defendant's records does not mean that the class is unascertainable.

**2. The Class Definition is Premised on Objective Data, Much of Which Can Be Corroborated by Defendant's Databases:**

In each instance the class member can be ascertained, identified or vetted based upon objective information. There are no subjective components to the class definition. Moreover, this objective information can be reported by a potential claimant on a short claim form and, in most instances, corroborated by reference to one of the electronic data

bases maintained by Defendant, thus making this case particularly amenable to class treatment.

### a. Subparagraph 1 of Class Definition:

As discussed above, whether a passenger has a confirmed reservation can be corroborated by the Lufthansa's database. The scheduled departure time is recorded by Lufthansa in its data base.

### b. Sub paragraph 2 of Class Definition:

The relevant flights (those cancelled or delayed for three hours with Class IATA Code assignments but no Technical Occurrence reports) can be determined by simple data queries from the data maintained by the defendant.

### c. Subparagraph 3 of Class Definition:

As in any class action, potential class members who already have recovered compensation from Lufthansa for cancellations or delay are excluded from the class definition. This information can be corroborated by Lufthansa through its claims database.

### D. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A):

#### 1. The Class Is Too Numerous for Joinder of Claims to be Practicable:

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. Fed. R. Civ. P. 23(a)(1). As a general rule of thumb, a showing of 40 or more potential class members warrants a finding of the requisite numerosity. The Savanna Group, Inc. v. Trynex, Inc., 2013 U.S. Dist. LEXIS 1277, *14 (N.D.Ill. Jan. 4, 2013). Moreover, a plaintiff need not plead or prove the exact number of class members to establish numerosity. Gerlib v. R.R.

Donnelley & Sons Co., 1997 U.S. Dist.  LEX IS 16842, *16 (N.D. Ill. Oct. 24, 1997). In addition to the number of persons in the proposed class, the Court may also consider "the geographic disbursement of the class members, the type of relief sought, and the practicality of relitigating the central issues of the controversy."  Herkert v. MRC Receivables Corp., 254 F.R.D. 344, 348 (N.D. Ill. 2008).  Moreover, this requirement does not necessitate that joinder be impossible, but simply that joining all members of the class would be impractical. See,  id. at 348; *see also* Peterson v. H&R Block Tax Servs., Inc., 174 F. R. D. 78, 81 (N.D. Ill. 1997) (Joinder is impractical when members are "widely scattered and their holdings are generally too small to  warrant undertaking individual actions").

Under these standards, the numerosity requirement is easily satisfied here. Defendant's provided information pursuant to prior order of this Court showing that several US passengers were rerouted together with Mr. Shabotinsky on a different flight subsequent to cancellation of LH 690 to be operated by Lufthansa AG from Frankfurt to Tel Aviv on August 25, 2014. Based on these numbers, Plaintiffs conservatively estimate that there are three (3) putative members in the Class. At the same time, common sense dictates that the proposed Class is geographically dispersed throughout the United States, making joinder impracticable. Furthermore, in the present circumstances, the modest size of the individual claims does not provide sufficient motivation for initiating and prosecuting individual suits. Consequently, the numerosity requirement is clearly met in this case.

   **2.  The Claims of Class Members Share Common Questions of Law and
        Fact:**

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Of course, it is not necessary that every question of law or fact be common to every member of the class. See, Boundas, 280 F.R.D. at 413. Rather, a common nucleus of operative law or fact is enough to satisfy the commonality requirement. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992). "Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class" such that "some factual variation among the class grievances will not defeat a class action." The Savanna Group, 2013 U.S. Dist. LEXIS 1277, at *28 (citations omitted); see also Spano v. Boeing Co., 633 F.3d 574, 585 (7th Cir. 2011); Rosario, 963 F.2d at 1017-18. In sum, what matters at class certification is that the Class Members' claims involve at least one common question that is capable of class-wide resolution. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011); see also Harris, 2013 U.S. Dist. LEXIS 47399, at *14; Boundas, 280 F.R.D. at 413; Harris, 2013 U.S. Dist. LEXIS 47399, at *14-15 ("It is well established that 'claims arising from interpretations of a form contract appear to present the class case for treatment as a class action.'" (citation omitted)). In the case at bar the following common legal questions are in existence:

- Does the Airline Deregulation Act preempt Plaintiffs' claims?

- Does the Montreal Convention preempt Plaintiffs' claims?

- Does the Air Transport Agreement between the United States and the European Union have any impact on Plaintiffs' consumer protection claims?

- Are Plaintiffs' claims barred because defendant took all actions required to mitigate plaintiff's damages?

- Should this Court decline adjudication based on the international comity doctrine?

Importantly, the defendant may raise further common legal questions after class certification related to the construction of Art. 19 and 22 of the Montreal Convention.

The answer to each of these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 131 S.Ct. at 2551. Accordingly, Plaintiffs have established commonality. Each of the aforementioned common questions can be decided with common evidence and common consideration of legal issues and will yield common answers "apt to drive the resolution of the litigation." <u>Id</u>. at 2551. Moreover, judicial efficiency and economy weigh in favor of trying these common questions in one suit.

### 3. The Shabotinsky' Claims Are Typical of Those of the Members of the Class:

Under Rule 23(a)(3), the claims of the representative parties must be "typical of the claims ... of the class." This requirement is closely related to commonality and is fairly easy to meet. Specifically, a plaintiff's claim is typical if it arises from the same practice or course of conduct that gives rise to the claims of other class members and the plaintiff's claims are based on the same legal theory. <u>Harris</u>, 2013 U.S. Dist. LEXIS 47399, at *19; <u>The Savanna Group</u>, 2013 U.S. Dist. LEXIS 1277, at *36; <u>Boundas</u>, 280 F.R.D. at 412. "Factual distinctions between the claims of the named plaintiffs and those of other class members" do not preclude class certification; rather, the "focus [is] on whether the named representatives claims have the same essential characteristics as the claims of the class at large." <u>The Savanna Group</u>, 2013 U.S. Dist. LEXIS 1277, at *36-37. As such, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against

certain class members." CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 725 (7th Cir. 2011); *see also* Herkert, 254 F.R.D. at 350 (same).

Here, like all proposed members of the Class, (a) the proposed Class Representative Mr. Shabotinsky were confirmed passengers on a flight during the class period operated by Lufthansa that was subject to Lufthansa's Conditions of Carriage; (b) their flight LH 690 to be operated by Lufthansa AG from Frankfurt to Tel Aviv on August 25, 2014 was cancelled; (c) Lufthansa assigned a Class IATA Code as the reason for cansellation and did not file a Technical Occurrence Report for the flight; and (d) Mr. Shabotinsky have not received any compensation from Lufthansa for his economic damages. See, supra, Section II(C). As such, Shabotinsky' injuries are qualitatively the same harm suffered by each putative member of the Class who were confirmed passengers on a flight that was operated by defendant, which was cancelled or delayed for 3 hours or more, and was coded by defendant with a Class IATA Code. Moreover, the interests of Mr. Shabotinsky align with those of the proposed Class generally. The liability, causation and damage elements of the claims against defendant –as well as defendant's affirmative defenses thereto – will succeed or fail on essentially the same factual and legal theories for the named Plaintiffs and the Class. In sum, the claims and injuries alleged by the named Plaintiff are typical of and co-extensive with the claims and injuries of other members of the Class. The typicality requirement is, therefore, satisfied on this record.

### 4. Plaintiffs and Their Chosen Counsel Will Fairly and Adequately Protect the Interests of the Class:

The fourth factor under Rule 23(a) requires a showing that the proposed class

representative will fairly and adequately protect the interest of the class. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods. v. Windsor, 521 U.S. 591, 625 (1997). Thus, to satisfy the adequacy requirement, the plaintiff must show that: (a) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (b) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (c) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously. The Savanna Group, 2013 U.S. Dist. LEXIS 1277, at *38-39; Cicilline v. Jewel Food Stores, Inc. , 542 F.Supp.2d 831, 837 (N.D. Ill. 2008).

In Amchem, the Supreme Court observed that "[t]he adequacy- of-representation Requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the Class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id at. 521 U.S. at 626 n. 20 (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982)). As discussed above, Plaintiffs are members of the Class they seek to represent, and there is no indication of conflict or antagonism between the proposed Class Representatives and the members of the proposed Class. Accordingly, the first prong of the adequacy inquiry is satisfied. In addition, Mr. Shabotinsky have actively participated in the prosecution of his claims, including sitting for depositions and staying abreast of the litigation, and they are ready and able to address any and all issues affecting the members of the proposed Classe.

As for the third prong, Plaintiff have retained counsel with significant experience in complex civil and Montreal Convention litigation. More specifically, the law firm of Gorokhovsky Law Offices LLC ("Plaintiffs' Counsel") is actively engaged in Montreal Convention litigation since 2003 and is nationally recognized law firms in the field of Montreal Convention litigation that have helped recover thousands of dollars for the benefit of aggrieved airlines passengers. To date, Plaintiffs' counsel have, among other things: (a) diligently investigated the claims against Lufthansa; (b) opposed several separate dispositive motions; (c) engaged in extensive fact discovery, and (f) timely filed this Motion for Class Certification within the deadlines set by this Court. Finally, Plaintiffs' Counsel is involved in similar cases in this District involving Montreal Convention, a factor that weighs in favor of finding Class Counsel to be competent and qualified. See, Cicilline, 542 F.Supp.2d at 837. As such, Plaintiffs' Counsel have demonstrated they will adequately protect the interest of the Class.

### E. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3):

Plaintiffs seek certification under Rule 23(b)(3), which provides that an action may be maintained as a class action if "the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Here, common questions of law and fact predominate over any individual issues that may exist and a class action is the superior method for adjudicating Plaintiffs' and the Class' claims. Accordingly, Plaintiffs' claims are suitable for certification under Rule 23(b)(3).

### 1. Common Questions of Law and Fact Predominate:

"Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members 'pre-dominate' over questions that are individual to members of the class. There is no mathematical or mechanical test for evaluating predominance. " Messner, 669 F.3d at814. "Individual issues need not be absent" as Rule 23(b)(3) "requires only that those questions not predominate over the common questions affecting the class as a whole." Id. at 815; see also The Savanna Group, 2013 U.S. Dist. LEXIS 1277, at *48 ("The 'mere existence,' however, of individual issues is insufficient to defeat predominance"). At its core, as Circuit Judge Richard Posner recently explained, "[p]redominance is a question of efficiency: is it more efficient, in terms both of economy of judicial resources and of the  expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials? A class action is the more efficient procedure for determining liability and damages in a case such as this involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit. If necessary, a determination of liability could be followed by individual hearings to determine the damages sustained by each class member."  Butler, 702 F.3d at 362; see also Harris, 2013 U.S. Dist. LEXIS 47399, at *32 ("[It is far more efficient to resolve all of the common issues in a single proceeding, and then to hold individual hearings on damages, if necessary, than it would be to litigate all of the common issues repeatedly in individual trials").  This predominance requirement is satisfied here. Plaintiffs have previously demonstrated that there are numerous common questions and defenses present in this litigation that are capable of generating common

answers. And while Plaintiffs recognize that Lufthansa will oppose perceived

individualized issues to be weighed against the identified common issues, the existence

of individualized issues does not forbid certification in the present

circumstances. See, The Savanna Group, Inc., 2013 U.S. Dist. LEXIS at *50 ("Indeed,

the record at this stage, suggests nothing other than that a limited number of sources of

evidence can resolve [the] issue[s]. Moreover, courts in this district have agreed that the

presence of some limited issues requiring individual inquiry do not defeat

predominance"). As a practical matter, a potential class member's claim would be

processed as follows, using a simple claim form with corroboration by defendant's

electronic databases. First, the claimant must have been a scheduled passenger on a flight

within the class definition –i.e., a flight on either the Class Cancelled Flight List or the

Class Delayed Flight List. As discussed above, this status can be confirmed through

reference to defendant's database, which includes the name of all passengers with

confirmed reservations for each of the flights within the class definition. Lufthansa may

choose to challenge a subset of claims with the affirmative defense of "extraordinary

circumstances."

     In addition, the claimants must show there are no other individual issues that

disqualify them for compensation under the Montreal Convention. For passengers on

Class Cancelled Flights, compensation would be denied in the instances where the

claimant arrived at her final destination two hours or less after the scheduled arrival time.

     Although this is a case where individualized damage issues will abound. Indeed,

under Art. 19 and 22 of the Montreal Convention, the compensation can be a

standardized amount depending on defendant's failure to take actions to mitigate

plaintiff's economic damages. Yet, once the common questions of liability are determined, the "individualized" inquiry into damages will be determined based upon objective, indisputable facts that can be provided on a simple claims form and confirmed in defendant's electronic databases – the distance of the scheduled flight and the passenger's delay to their final destination. See, Cicilline, 542 F.Supp.2d at 838; Searcy, 2010 U.S. Dist. LEXIS 4334, at *20. In this case, regardless of any residual individual issues that may exist, real efficiency can be achieved by Deciding the common, predominating issues of law or fact first. See, Butler, 702 F.3d at 362 ("The class action procedure would be efficient not only in cost, but also in efficacy, if we are right that the stakes in an individual case would be too small to justify the expense of suing, in which event denial of class certification would preclude any relief"). This is particularly true in cases like this where these common questions can be resolved by evidence common to the class as a whole rather than its members. See, id. at 363 ("It is more efficient for ... the question common to all class members to be resolved in a single proceeding than for it to be litigated separately in hundreds of different trials"). To this end, the operative Complaint presents common questions that predominate. 2.

### A. Class Action is the Superior Method for Adjudicating Plaintiffs' and the Class' Claims:

Lastly, to satisfy superiority, Plaintiffs must demonstrate " that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, the following relevant factors should be considered:"(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Id. Importantly, as the United States Supreme Court explained in Amchem, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.: Id.

A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" 521 U.S. at 617; *see also* Pastor v.  State Farm Mut. Auto. Ins. Co., 487 F.3d 1042, 1047 (7th Cir. 2007).  Seventh Circuit Judge Posner has offered similar sentiments: The more claimants there are, the more likely a class action is to yield substantial  economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. ... The realistic  alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be pronounced an inferior alternative –
no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original). In sum, "[c]lass certification is a 'sensible legally permissible alternative to ... individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs.'" Boundas, 280 F.R.D. at 416 (*quoting* Saltzman II, 606 F.3d at 393). Here, class treatment is superior to other available methods of litigation. It would be far  more costly for each individual class member to separately seek relief.  See, The Savanna Group, 2013 U.S.

Dist. LEXIS 1277, at *53 ("[T]he small potential recovery in individual actions –the greater of $500 or 'actual monetary loss' from the violation – and reduced likelihood that plaintiffs will bring them also weighs in favor of class-wide resolution").

Moreover, separate lawsuits would require analysis of the same course of conduct and legal questions by a multitude of courts and juries. See, *id*. at * 52-53. Finally, all four factors in Rule 23(b)(3) are present here because (a) the amount of recovery is small – 600 euros or less; (b) Plaintiffs' Counsel are not aware of any other cases involving Iberia and its failure to compensate passengers in accordance with EU 261 pending in the United States; (c) the Northern District of Illinois is no better and no worse than any other forum; and (d) it would be efficient and manageable to proceed as a class action given the predominance of common questions and the relative ease at which the claims process could be administered, particularly when compared to the alternative of thousands of individual actions. See, Boundas, 280 F.R.D. at 417 (explaining how each of the four factors have been met).

### F. ABSENT CLASS TREATMENT, DEFENDANT DOES NOT COMPLY WITH ART. 19 OR ITS CONTRACT AND U.S. RESIDENTS ARE LEFT WITH NO PRACTICAL RECOURSE:

Judge Posner has stressed, that, in essence, to deny class certification, " a class action has to be pronounced an inferior alternative...to no litigation at all." Carnegie.,376 F.3d at 661. As discussed below, without the efficiencies of class treatment, U.S. residents will be left with no practical legal recourse and Defendant will be left free to continue to deny U.S. residents compensation under Art. 19 of the Montreal Convention and its Contract.

#### 1. Defendant Does Not Proactively Comply with Art. 19 of the Montreal Convention:

Contrary to its contractual promise and its affirmative duties under Art. 19 of the Montreal Convention, Defendant does not proactively comply with Art. 19. Instead, Defendant requires that passengers file an individual claim. Moreover, Defendant does not make the claim process easy. There are no claims offices in any airports. Id. Instead, the claims office is located off-site in Germany, and passengers must file a claim through the website, mail, or email.

### 2. Defendant Denies The Vast Majority of Claims for Compensation Filed by Individual Passengers:

As was noted above, the defendant maintains a database related to all claims for any type of compensation made by its passengers. In discovery, Plaintiff will be able to obtain data for all claims related to all flights during the Class Period. This data will very likely provided insights into individual claims and class claims.

First, focusing on the Shabotinsky flight, the defendant database is likely to reveal several claims made by passengers for some type of compensation related to LH 690 to be operated by Lufthansa AG from Frankfurt to Tel Aviv on August 25, 2014, including one by Mr. Shabotinsky. Upon, information and believe Lufthansa rejected those claims. Further discovery will also show how many claims were paid by Lufthansa after the claimants sued Lufthansa. Still, Lufthansa continues to deny liability in this case and rejected or ignored the remaining claims. The bottom line is: of several hundred passengers on flight LH690, none of them have been paid any compensation.

Not surprisingly, only a small portion of passengers attempt to navigate Lufthansa's claim process. For example, an analysis of defendant's claims data in its relevant data base and its passenger count data is likely to show that only less than one percent of passengers received any monetary compensation from Lufthansa. These

numbers demonstrate that without class certification, U.S. residents will be deprived of their rights under Art. 19 and 22 of the Montreal Convention.

### 3. Absent class action treatment aggrieved passengers will have Little to No Recourse for U.S. Residents:

In prior briefing, Iberia has repeatedly suggested that the National Enforcement Bodies ("NEB") provide a superior process to this action. However, for a host of reasons it is highly impractical for U.S. residents to file small legal claims in Europe, and, more significantly, most NEBs do not provide a process for adjudicating and enforcing individual claims for compensation. The NEBs are simply not a viable alternative for U.S. residents.

### 4. Defendant's Positions in this Litigation Demonstrate that Individual Actions by U.S. Residents Would be a Futile War of Attrition:

Lufthansa's litigation strategy mirrors the obstinacy of its internal claims process. Lufthansa has filed plethora of various motions in this action, each raising multiple defenses. Without doubt Lufthansa's response to this motion undoubtedly will portray this case as a quagmire of complexity, and is likely to attack the plaintiff and his counsel. Yet, if will be deposed, Lufthansa's Rule 30(b) deponent and claims department head are expected to testify in intrinsic support of plaintiff's claims for compensation of their economic damages.

### IV. CONCLUSION:

Based on the foregoing, Plaintiffs respectfully request this Court grant the instant motion and 1) certify the Proposed Class; 2) appoint Plaintiff David Shabotinsky as Class Representatives; and 3) affirm Plaintiffs' chosen counsel as counsel for the Class.

Dated this Motion on this 22nd day of July 2017.

Respectfully submitted by

GOROKHOVSKY LAW OFFICE, L.L.C.

Attorney for Plaintiffs

*Vladimir M. Gorokhovsky, Esq.*

BY: _____

/s/VLADIMIR M. GOROKHOVSKY, LL.M.

ILND TR. 10994

**P.O. Business Address:**

Gorokhovsky Law Office, LLC

10919 North Hedgewood Ln.,

Mequon, WI 53209

Telephone: (414)-581-1582

gorlawoffice@yahoo.com

CERTIFICATE OF SERVICE:

I hereby certify that on July 23, 2017 I caused a copy of the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

***Vladimir M. Gorokhovsky, Esq.***

_____

/s/ VLADIMIR GOROKHOVSKY

I  TABLE OF CONTENTS

I.    INTRODUCTION....................................................................................1

II.   BACKGROUND AND STATEMENT OF FACTS.............................................3

      A. DEFENDANT IS OBLIGATED BY ART. 19 and 22 OF THE MONTREAL
         CONVENTION AND ITS CONDITIONS OF CARRIAGE TO PROVIDE
         COMPENSATION TO PASSENGERS FOR DEFINED CATEGORIES OF
         CANCELLED AND DELAYED FLIGHTS....................................................3

      1. Art. 19 and 22 of Montreal Convention Provides Viable Mechanism for
         Compensation to U.S. Passengers Affected by Flight Cancellations and
         Long Delays on particular Issue of Defendant's Actions Undertaking to
         Mitigate Passengers Damages....................................................................3

      2. Defendant Are Obligated to Abide by Art. 19 of the Montreal Convention
         in operation of law………................................................................7

      B.  DEFENDANT MAINTAINS EXTENSIVE DATA RELATED TO FLIGHTS
          AND PASSENGERS DURING THE CLASS PERIOD, ENABLING
          CLASS MEMBERS TO BE IDENTIFIED AND CONFIRMED...................8

          1.  Defendant's Passenger Data ………….............................................8

          2.   Defendant's Flight Data.....................................................................8

      C.  FACTS SPECIFIC TO  PROPOSED CLASS REPRESENTATIVES......9

III.   LEGAL ANALYSIS..........................................................................10

       A.   APPLICABLE LEGAL STANDARD.................................................10

       B.   THE CLASS DEFINED....................................................................11

       C.     ASCERTAINABILITY..................................................................12

       1.    An Identifiable Class Exists If Its Members Can Be Ascertained
             by  Reference to Objective Criteria..............................................12

       2.    The Class Definition is Premised on Objective Data, Much of
             Which Can be Corroborated by Iberia's Databases...............14
             a.  Subparagraph 1 of Class Definition.................................14
             b.  Subparagraph 2 of Class Definition.................................14
             c.   Subparagraph 3 of Class Definition................................14

D. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A)....15

1. The Class is Too Numerous for Joinder of Claims to be Practicable..................................................................15

2. The Claims of Class Members Share Common Questions of Law and Fact............................................16

3. The Shabotinsky Plaintiff' Claims are Typical of Those of the Members of the Class............................................17

4. Plaintiffs and Their Chosen Counsel Will Fairly and Adequately Protect the Interests of the Class.............19

E. THE CLASS SATISFIES  THE REQUIREMENTS OF RULE 23(b).......21

1. Common Questions of Law and Fact Predominate.......21

2. A Class Action is the Superior Method for Adjudicating Plaintiffs' and the Class' Claims....................................24

F.  ABSENT CLASS TREATMENT, DEFENDANT DOES NOT COMPLY WITH ART. 19 AND U. S. RESIDENTS ARE LEFT WITH NO PRACTICAL RECOURSE.....................................................................26

1. Defendant Does Not Proactively Comply with Art. 19 ........26

2. Defendant Denies The Vast Majority of Claims for Compensation Filed  by Individual Passengers.................27

3 Absent class action treatment aggrieved passengers will have Little to No Recourse for U.S. Residents…....................28

4 Defendant's Positions in this Litigation Demonstrate that Individual  Actions by U. S. Residents Would be a Futile War of Attrition....................................................................28

V. CONCLUSION.................................................................................28

CERTIFICATE OF SERVICE..............................................................29

## TABLE OF AUTHORITIES CASES                                    PAGE(S)

Ehrlich v. American Airlines, Inc**.**, 360 F.3d 366, C.A.2 (N.Y.)………………………..4,5

Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 780 (7th Cir. 2008).5

Paradis v. Ghana Airways, Ltd., 348 F. Supp. 2d 106, 114 (S.D.N.Y. 2004), aff'd, 194
Fed. Appx. 5 (2nd Cir. August 18, 2006)……………………………………………………6

Ikekpeazu v. Air France, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4
(D. Conn. Dec. 6, 2004)…………………………………………………………………..6

Daniel v. Virgin Atl. Airways Ltd, 59 F. Supp. 2d 986, 992 (N.D. Cal. 1998)…………...6

Lee v. American Airlines, Inc., No. 3:01-CV-1179-P, 2002 U.S. Dist. LEXIS 12029 at
*13 (N.D. Tex. July 2, 2002), aff'd, 355 F.3d 386, 387 (5th Cir. Tex. 2004)…………...6,7

Messner v. Northshore Univ. Healthsystem, 669 F.3d 802, 811 (7th Cir. 2012)…………..
………………………………………………………………………………..10,11,21

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974)………………………………..10

Pella Corp. .v. Saltzman, 606 F.3d 391, 394 (7th Cir. 2010)("Saltzman II")……………11

Mejdrech v. Met-Coil Sys. Corp., 319 F.3d 910, 912 (7th Cir. 2003)……………………...11

Jones v. Nat'l Council of YMCA,  2012 U.S. Dist. LEXIS155090, *4 (N.D. Ill. Oct. 30,
2012)………………………………………………………………………………..12

Butler v. Sears, Roebuck and Co., 702 F.3d 359, 362-363 (7th Cir. 2012)……….12,22,23

Schorsch v. Hewlett-Packard Co., 417 F.3d 748, 750 (7th Cir. 2005)…………………..12

Holtzman v. Turza, 2009 U.S. Dist. LEXIS 95620, *14 (N.D. Ill. Oct. 14, 2009)………12

Simer v. Ros, 661 F.2d 655, 669 (7th Cir. 1981)………………………………………...12

Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006)…………………………...12

Harris v. comScore, Inc., 2013 U.S. Dist. LEXIS 47399, *23 (N.D. Ill. Apr. 2, 2013)……
………………………………………………………………………....12,13,17,18,22

Boundas v. Abercrombie & Fitch, Inc., 280 F.R.D. 408, 417 (N.D. Ill. Mar. 7, 2012)….

…………………………………………………………………………12,16,17,18,25

Jamison v. First Credit Servs., Inc., 2013 U.S. Dist. LEXIS 43978, *52 (N.D. Ill. Mar. 28, 2013)……………………………………………………………...……..12,13

Searcy v. eFunds Corp, 2010 U.S. Dist. LEXIS 4334,*18-19 (N.D.Ill. Jan. 20, 2010)....13

Saltzman v. Pella Corp., 257 F.R.D. 471, 476 (N.D. Ill. 2009) ("Saltzman I")…………13

The Savanna Group, Inc. v. Trynex, Inc., 2013 U.S. Dist. LEXIS 1277, *14 (N.D.Ill. Jan. 4, 2013)……………………………………………………………...15,16,17,18,19,21,22,25

Herkert v. MRC Receivables Corp., 254 F.R.D. 344, 348 (N.D. Ill. 2008)………...15,18

Peterson v. H&R Block Tax Servs., Inc., 174 F.R. D. 78, 81 (N.D. Ill. 1997)…………..15

Rosario v. Livaditis, 963 F.2d 1013, 1018 (7 th  Cir. 1992)……………………………...16

Spano v. Boeing Co., 633 F.3d 574, 585 (7th Cir. 2011)………………………………..16

Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011)…………………………..17

CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721,725 (7th Cir.2011)….18

Amchem Prods. v. Windsor, 521 U.S. 591 (1997)..........................................19, 27, 32-33

Cicilline v. Jewel Food Stores, Inc. , 542 F.Supp.2d 831, 837 (N.D. Ill. 2008)……..19,23

Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982)……………..20

Pastor v.  State Farm Mut. Auto. Ins. Co., 487 F.3d 1042, 1047 (7th Cir. 2007)………..24

Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004)……………......25,26

INTERNATIONAL TREATIES

Montreal Convention…………………………………………………………passim

**REGULATIONS, STATUTES, and TREATIES**

14 C.F.R. §234.4.................................................................................................passim

14 C.F.R. §1560.101...........................................................................................passim

14 C.F.R. §1560.111...................................................................................................passim

RULES Fed. R. Civ. P. 23 .........................................................................................passim

## OTHER AUTHORITIES

Department of Homeland Security, Transportation Security Administration,
Secure Flight Program: Part II, 73 Fed. Reg. 64018 (Oct. 28, 2008)……………....passim

Department of Transportation, Reporting the Causes of Airline Delays and Cancellations,
67 Fed. Reg. 70535 (Nov. 25, 2002)........................................................................passim